IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03510-RM-SKC

JOHN E. AUGSPURGER D.D.S.

      Plaintiff

v.

Thomas Pyne DDS in his official capacity;
Mark Adams, DDS, MS, Panel Chair - Panel A -
in his official capacity; Paige McEvoy, RDH, MS -
in her official capacity; Lisa Carlson-Marks, DDS
in her official capacity; Rominder Kaur, DDS
in his official capacity; Greggory LaBerge, Ph.D.,
Panel Vice Chair in his official capacity;
Kenneth Feiler - in his official capacity;
Mason Miner, DDS, Panel Chair - Panel B -
in his official capacity; Yanira Owens, RDH,
MHA in her official capacity; Patricia Schonberger,
RDH in her official capacity; Natalie Schafer,
DDS, MS in her official capacity; Vidhyalakshmi
Sampath, DDS in his official capacity; Evon
Holladay, MBA in his official capacity.
The individual defendants are sued herein in
their official capacity as members of the Colorado
Dental Board.
      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF [DOC. 2]

      The Defendants in the matter, current and former members of the Colorado

Dental Board, pursuant to F.R.C.P. 12 (b)(1) and 12 (b)(6), move to dismiss Plaintiff's

Complaint ("Complaint") for lack of subject matter jurisdiction, or in the alternative for

failure to state a claim upon which relief can be granted.  In support of this motion the Department states as follows:

### D.C. COLO. LCiv.R 7.1(a) Certification

In accordance with D.C.COLO.LCivR 7.1(b)(2), undersigned counsel conferred with Plaintiff's counsel on May 17, 2021, by email before filing this Motion. Plaintiff is opposed to the relief requested herein.

### BACKGROUND

Plaintiff, a dentist licensed to practice dentistry in Colorado, brings this action for declaratory and injunctive relief against several current and former members of the Colorado Dental Board. Plaintiff seeks to enjoin the Board from disciplining Plaintiff for unprofessional conduct. Plaintiff's principal place of business where he provides health care services is in Colorado. Plaintiff's Complaint ¶1. The Colorado Dental Board regulates the practice of dentistry in the state of Colorado. Colo. Rev. Stat. §12-220-101, et seq. The powers and duties of the Board include investigating unprofessional conduct and taking disciplinary action against licensed dentists who engage in such conduct. See C.R.S. §12-220-106 (2020) and C.R.S. §12-220-201 (2020). The Board may impose discipline following notice and an administrative hearing conducted pursuant to C.R.S. §24-4-104. Parties may also resolve matters through stipulations.

Defendants contest many of the factual allegations asserted by Plaintiff in the Complaint but accept them as true for the limited purposes of this Rule 12 motion. However, Plaintiff failed to inform this court of one clarifying fact, the parties' stipulation in Board Case no. 2016-6415-A, which Plaintiff refers to as the D.G. case, was deemed

2

completed on September 30, 2020, administratively closed, and is no longer at issue. *See* Defendant's Exhibit C. The only active case before the Board is Board Case no. 2017-6034-A involving the treatment of patient J.R.

On October 26, 2017, Inquiry Panel A of the Dental Board sent Plaintiff a "30 day letter" requesting he respond to the allegations in Board Case no. 2017-6034-A. Plaintiff's Complaint ¶50. On December 17, 2017, Plaintiff provided his formal response to Inquiry Panel A regarding the allegations. *See* ¶55 and Plaintiff's Exhibit 2.  On February 27, 2018, without resolving Board Case no. 2017-6034-A, Plaintiff and the Board entered into a disciplinary stipulation resolving Board Case no. 2016-6415-A. *See* Plaintiff Ex. 7. The stipulation in Board Case no. 2016-6415-A involved Plaintiff admitting to unprofessional conduct including substandard care of a patient, D.G., and specifically agreeing that the stipulation "does not resolve any other cases, complaints or matters, known or unknown to the Board or [Plaintiff]." Plaintiff Exhibit 7, ¶3. Therefore, the stipulation in Board Case no. 2016-6415-A did not resolve Board Case no. 2017-6034-A, known to both parties to still be in controversy. The stipulation in Board Case no. 2016-6145-A required the Plaintiff to complete coursework and practice monitoring. *See* Plaintiff's Exhibit 7, ¶9 and 21-27.

Following the receipt of the complaint and Plaintiff's response in Board Case  no. 2017-6034-A, the Board's Inquiry Panel A referred the matter for evaluation by a consultant who opined that Plaintiff's care of patient J.R. was below the standard of care. *See* Defendants' Exhibit A. Following a full investigation, the Board's Inquiry Panel A

referred Board Case No. 2017-6034-A to the Office of the Attorney General for the initiation of formal disciplinary proceedings.

While the Board investigated Board Case 2017-6034-A, Plaintiff remained under the requirements of the stipulation in Board Case 2016-6415-A. Plaintiff failed to complete the practice monitoring component of his stipulation. *See* Defendant's Exhibit B detailing examples of rejected practice monitors found to be unsuitable. On May 14, 2020, the Board's Inquiry Panel A referred both Board Cases 2016-6415-A and 2017-6034-A to the Office of the Attorney General for formal administrative proceedings because Plaintiff had violated the 2016-6415-A stipulation and the Board's Inquiry Panel A initially sought a combined resolution of both matters. On September 30, 2020, parties separately resolved Board Case 2016-6415-A as detailed above. *See* Defendant's Exhibit C. Therefore, only Board Case 2017-6034-A remains at issue in front of the Dental Board.

## **ARGUMENT**

## **I.   THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR PLAINTIFF'S COMPLAINT**

Plaintiff alleges that he is entitled to a preliminary injunction, ¶186, a permanent injunction, ¶229, and declaratory relief, ¶231. Plaintiff asserts that the Board has engaged in a "bad faith prosecution" in violation of his due process rights granted by the Fourteenth Amendment. ¶17. This Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction over the claims, most importantly because the Court should exercise *Younger* deference, or in the alternative the complaint fails to state a claim upon which relief can be granted.

4

Following discussion of the appropriate standard, this motion will show that the Board's actions were within its broad powers to protect the public through regulation of the practice of dentistry and Plaintiff cannot reasonably argue that the Board exceeded its powers. The Court should exercise *Younger* deference and decline to find subject matter jurisdiction as Plaintiff cannot meet the burden of overcoming deference, nor has he shown "bad faith" on behalf of the Defendants. However, should this court find *Younger* deference inapplicable, the court should nonetheless dismiss for a lack of subject matter jurisdiction based upon the *Burford* doctrine and because his claims are unripe.

## A. LEGAL STANDARD

Fed. R. Civ. P. Rule 12(b)(1) provides for dismissal of a complaint where the court lacks subject matter jurisdiction. The determination of a court's subject matter jurisdiction is a threshold question of law for which the party invoking the court's jurisdiction bears the burden of proof. *Safe Sts. Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017); *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1166 (10th Cir. 2003). If the opposing party challenges the jurisdiction of the court as a matter of law, the court must accept the factual allegations as true and determine whether those facts state a claim over which the court has jurisdiction. *Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249, 1251 (D. Colo. 1998).

## B. THE BOARD ACTED WITHIN ITS BROAD AUTHORITY TO REGULATE THE PRACTICE OF DENTISTRY IN COLORADO

The authority of the States to regulate the practice of certain professions is deeply rooted in our nation's jurisprudence.   The Supreme Court deemed it "too well settled to

require discussion" that "the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health." *Watson v. State of Maryland*, 218 U.S. 173, 176, (1910). *See also Dent v. West Virginia*, 129 U.S. 114, 122 (1889). ("[I]t has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely.").  States have "broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792, (1975).; s*ee also Ohralik v. Ohio State Bar*, 436 U.S. 447, 460 (1978). ("[T]he State bears a special responsibility for maintaining standards among members of the licensed professions."). The exercise of this authority is necessary to "shield[] the public against the untrustworthy, the incompetent, or the irresponsible." *Thomas v. Collins*, 323 U.S. 516, 545, (1945) (Jackson, J., concurring). Licensing and regulation by the State provides patients with the confidence to put their health in the hands of those who utilize knowledge and methods with which the patients have little or no familiarity. *Stuart v. Camnitz*, 774 F.3d 238, 247 (4th Cir. 2014). (quotation and citation omitted).

The Dental Board has broad judicial and prosecutorial powers set forth in §12-220-106 C.R.S. (2020). The Board is divided into two panels for disciplinary action, Panel A and Panel B. Each panel serves as both an inquiry panel and a hearing panel. When a written complaint is received it is assigned to one of the two panels to act as inquiry panel. The inquiry panel undertakes an investigation into the charges to determine whether there are sufficient grounds for discipline. The Board is empowered to investigate all complaints and may even initiate them without a complaint. §12-220-106 C.R.S. (2020). If further

proceedings are warranted, the matter is referred to the hearing panel which may conduct an evidentiary hearing or refer the matter to an appointed hearing officer for an evidentiary hearing, subject to the hearing panel's review. *Id*. The individual against whom a complaint is filed must be informed of the charges and provided an opportunity to respond and appear in their own defense with counsel. When the hearing panel submits its report or order with findings and conclusions, it becomes the order of the Board.

As a preliminary matter, the claims against Defendants who are current or former members of Panel B, specifically, Dr. Mason Miner, Yanira Owens, Patricia Schonberger, Dr. Natalie Schafer, Dr. Vidhyalakshmi Sampath, and Evon Holliday, should be dismissed. The Board case currently pending (case 2017-6034-A) was investigated by Inquiry Panel A, and Panel B will act as hearing panel. The current and former members of Panel B had no knowledge of Board Case 2017-6034-A prior to the filing of this suit by Plaintiff, because the matter has not yet been brought for adjudication. The state official sued in a case invoking the *Ex Parte Young* exception to the Eleventh Amendment "must have 'some connection' to the enforcement of the allegedly defective act." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). The current and former members of Panel B have no such connection to Plaintiff's case. Furthermore, Kenneth Feiler is no longer a member of the Dental Board.  An action against a public official in their official capacity is a suit against the office that official represents and not against the official himself – it imposes liability on the entity only. *Welch v. Laney*, 57 F.3d 1004, 1008 (10th Cir. 1995). As Kenneth Feiler is no longer a member of the Dental Board he cannot be sued as a representative of the Board. *See e.g. Williams v. Goldsmith*, 4 F.Supp.2d

1112, 1121-22 (M.D. Ala. 1998) (holding former sheriff and deputy sheriff were not proper defendants for official capacity claims).

Each of the actions taken by Inquiry Panel A with respect to Plaintiff are squarely within the powers of the Board. The Board is permitted to open an investigation of Plaintiff's care upon a complaint by a patient. The Board is permitted to investigate any aspect of Plaintiff's care in the practice of dentistry. The Board is permitted to take action when a dentist violates a stipulation, a valid board order, by failure to complete the practice monitoring components of a stipulation. *See* §12-220-201(1)(i) C.R.S. (2020).

Because Plaintiff cannot assert that the Board lacks power to pursue disciplinary action in general, he asserts that any disciplinary action as it pertains to the care of Patient J.R. would be part of a bad faith course of "harassment".   However, the principles of *Younger v. Harris,* 401 U.S. 37 (1971) weigh against such a finding and call for this court to defer to the state proceeding and dismiss this action.

## C.  THE *YOUNGER* ABSTENTION DOCTRINE CALLS FOR THIS CASE TO BE DISMISSED

Under the *Younger* abstention doctrine, federal courts should not "interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—" when a state forum provides an adequate avenue for relief. *Reinhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). *Younger* abstention is not discretionary, and this court must abstain if the conditions are met. The 10th Circuit outlined the factors for abstention in *Amanatullah v. Colorado Bd. Of Medical Examiners*, 187 F.3d 1160, 1163

8

(10th Cir. 1999) specifically "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Id*. (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir.)). In *Amanatullah*, the 10th Circuit found that *Younger* abstention was appropriate when Dr. Amanatullah, a Colorado licensed physician, sought injunctive relief to prevent the Colorado Medical Board from pursuing professional discipline. *Id*.

1. Prong I – Ongoing Administrative Proceeding

The facts of *Amanatullah* are almost identical to Plaintiff's case. Dr. Amanatullah was advised of the Medical Board's investigation through the issuance of a similar 30-day letter. *Amanatullah* at 1163. The 10th Circuit held that this action is the commencement of state proceedings for purposes of prong 1 of the *Younger* doctrine. *Id*. Here, Plaintiff admits he was apprised of the J.R. complaint on October 26, 2017. Plaintiff's Complaint ¶50. The fact that the formal notice of charges has not yet been filled is irrelevant to whether this Court should abstain as substantial proceedings have already taken place in this matter.

2. Prong II – State Court Provides Adequate Forum for Claims Raised

The facts relevant here to the second prong are also identical to the *Amanatullah* case. The court in that case found "the state provides an adequate forum to hear Amanatullah's constitutional and civil rights claims raised in his federal complaint." *Amanatullah* at 1164. The court found "The Colorado Administrative Procedure Act

9

provides that '[i]n order to assure that all parties to any agency adjudicatory proceeding are accorded due process of law,' the administrative law judge has the authority 'to dispose of motions to dismiss for lack of agency jurisdiction over the subject matter or parties or for *any other ground*." *Id.* (quoting C.S.R. § 24-4-105(1) and (4)). This is identical to the proceeding that will be used in the resolution of the Board Case no. 2017-6034-A. Likewise, Plaintiff's agency action will be subject to judicial review and "it is sufficient for purposes of *Younger* abstention that federal challenges, such as [Plaintiff]'s civil rights complaints, may be raised in state court judicial review of administrative proceedings." *Id.* Plaintiff will have the opportunity to plead "bad faith" prosecution, or any other constitutional law claim, in front of the administrative law judge as well as during judicial review.

3. Prong III – State Proceedings Involve Important State Interests and Matters Which Traditionally Look to State Law for Resolution

As to the third prong, the court in *Amanatullah* found:

"that there is no question that the licensing and discipline of physicians involves important state interests, matters which traditionally look to state law for their resolution, or implicate separately articulated state policies. As the district court observed, it is difficult to imagine a state interest more important than the protection of its citizens against the harms of unauthorized, unqualified, and improper practice of medicine." *Id*. at 1164-1165.

10

The state interest in regulating the practice of dentistry is equal to that of regulating the practice of physicians and the Colorado legislature has enshrined this important state interest in statute. §12-220-102, C.R.S. Furthermore, Plaintiff himself highlights the necessity of unique expertise in paragraphs 77 through 128 of his complaint and the discussion of technical questions of dental practice standards. Such questions regarding whether Plaintiff has practiced within the standard of care are best left to initial adjudication by the Board.

4. Plaintiff Has Not Demonstrated Bad Faith on the Part of the Defendants

Finally, conclusory allegations of bad faith and harassment are insufficient to overcome the heavy burden of overcoming the abstention doctrine. *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). In fact, the federal plaintiff "must *prove* bad faith or harassment before intervention is warranted." *Phelps v. Hamilton*, 50 F.3d 1058, 1066 (10th Cir. 1995).  It is not enough to simply plead bad faith and harassment, the exception to *Younger* requires "bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown" *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

The Board's Inquiry Panel A has identified an expert witness who will opine as to the deficiency of Plaintiff's care of Patient J.R. It is the Board's position that such testimony is sufficient for a finding that Plaintiff violated the Dental Practice Act, subjecting his license to discipline. Where there exists a reasonable basis for each of its actions, multiple proceedings by themselves cannot constitute bad faith or harassment.

*See e.g. Weitzel v. Div. of Occupational and Professional Licensing of the Dept. of Commerce of the State of Utah*, 240 F.2d 871, 877 (10th Cir. 2001).

As to the second possibility, the irreparable injury must be "great and immediate" and the "threat to the plaintiff's federally protected rights" is only irreparable if it "cannot be eliminated by ... defense against a single prosecution." *Younger*, 401 U.S. at 46. Board Case no. 2017-6034-A concerns a single action based upon a single complaint. Defendants have taken no action beyond fulfilling their public protection role to investigate complaints brought to them. In *Phelps,* the court upheld *Younger* abstention even though the plaintiffs, members of the Westboro Baptist Church, had been subjected to 20 prosecutions in two years and the prosecutor had made statements amounting to personal animosity of the plaintiffs. *See Phelps* at 890. Plaintiff in the current case has been investigated for at most five cases over three years, some of which were dismissed following review of plaintiff's response, with no evidence of personal animosity on the part of any Board member or attempt to retaliate for any exercise of constitutional rights. Plaintiff has also not shown that a different licensing board in a similar circumstance would have dismissed the complaints against him. *See Wilson v. Morrissey*, 527 Fed.Appx. 742, 744 (10th Cir. 2013).

Plaintiff's case is a textbook example of a state court action which federal courts should allow to resolve without intervention under the principles of *Younger*.

### D. ABSTENTION UNDER THE BURFORD DOCTRINE ALSO COMPELS DISMISSAL

Application of the abstention doctrine articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315, (1943), further supports this Court abstaining from considering Plaintiff's request for extraordinary injunctive relief.  "Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar'; or (2) where 'the exercise of federal review of the question in a case and in similar circumstances would be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern.'" *New Orleans Public Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal citations omitted).  The purpose of the *Burford* doctrine is to avoid interference with matters of sensitive local importance, especially where the special expertise of an agency is involved.

Colorado's Dental Practice Act and the Administrative Procedures Act provide adequate and timely state court review of Plaintiff's claims.  Plaintiff's Complaint seeks a preliminary injunction that will result in direct interference with an administrative regulatory system.  The system is unquestionably an area of great local importance as it is directed at protecting the citizens of Colorado in the delivery of health care services. In addition, the system involves unique expertise, here, the matter of the practice standards of dentists in the state of Colorado. As discussed above under the second

13

prong of the *Younger* test, matters of technical expertise in the practice of dentistry are much better suited to initial adjudication by the Board.

E. **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS UNRIPE BECAUSE THE ADMINISTRATIVE PROCESS IS ONGOING**

Federal courts' jurisdiction only extends to actual cases or controversies in which the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998) (citation omitted). The doctrine of ripeness protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013).

In deciding whether an agency's decision is ripe for judicial review, courts examine "both the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733 (1998). In determining the fitness of issues for review, courts consider "whether judicial intervention would inappropriately interfere with further administrative action" and "whether the courts would benefit from further factual development of the issues presented." *Farrell-Cooper Min. Co. v. U.S. Dep't of Interior,* 728 F.3d 1229, 1234 (10th Cir. 2013). When the agency actions challenged in the underlying federal case are subject to ongoing administrative review, federal court review would "disrupt the administrative process." *Id.* at 1235 (citation omitted)*; but see Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1219 (10th Cir. 2018).

14

Plaintiff's treatment of patient J.R. is subject to ongoing administrative review at the Office of Administrative Courts. The opportunity to respond to and challenge the Inquiry Panel's charges will be afforded to Plaintiff during the administrative process, pursuant to the Colorado Administrative Procedures Act. Intervention by a federal court would inappropriately interfere with the administrative process and the further factual development of the issues to be presented in that venue. As such, Plaintiff has not established that his claims are ripe, and this Court should not disrupt the administrative process.

II.   **PLAINTIFF FAILS TO STATE A CLAIM**

Even if this court had subject matter jurisdiction over Plaintiff's claims, the claims would still fail to state a claim upon which relief may be granted because Plaintiff cannot demonstrate that he has been harmed in a way that entitles him to injunctive relief and has failed to adequately demonstrate a violation of his right to due process.

A.  **LEGAL STANDARD**

Under Fed. R. Civ. P. Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

15

not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  A complaint must contain factual allegations that state a plausible claim to relief on its face. *Id.*  While the averments of material fact must be accepted as true and viewed in the light most favorable to the plaintiff, a court is not required to accept as true legal conclusions that are couched as factual allegations. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011). For example, a conclusory allegation of intent, including bad faith, without factual support is insufficient.  *Id* at 1092.

### B. PLAINTIFF FAILED TO PLEAD PLAUSIBLE MISCONDUCT OR ACTUAL OR IMMENENT HARM AND IS NOT ENTITLED TO INJUNCTIVE RELIEF

Plaintiff does not seek monetary relief in this action, only declaratory and injunctive relief. Plaintiff fails to meet the burden to enjoin lawful government activity because he has not plead plausible government misconduct, nor has he alleged any real harm entitling him to relief.

Because Plaintiff seeks to enjoin a government agency investigation and administrative proceeding, he bears a greater burden than in a private injunction action. *Naked City, Inc. v. Aregood*, 667 F. Supp. 1246, 1252 (N.D. Ill. 1987) (citations omitted).[1]  To obtain an injunction against government activity a plaintiff must demonstrate "a persistent pattern of [governmental] misconduct." *Id*. citing *Allee v. Medrano*, 416 U.S. 802, 815, (1974) (other citations omitted). As explained in the

---

[1] Preliminary Injunction denied where sought by property owner and promoters against law enforcement officers and prosecutor to enjoin them from investigating, prosecuting, and otherwise "harassing" them.

section on broad Board powers above, the Board's actions were all within the lawful scope of its powers and duties. Plaintiff has identified no source for his belief that separate lawful actions, each of which is within the power of the Board, may somehow together form a pattern of misconduct.

1. <u>Standard for Preliminary Injunction</u>

A party seeking a preliminary injunction must satisfy a four-factor test to be awarded such extraordinary relief as the grant of a preliminary injunction is "the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). The four part test of which the requesting party must demonstrate each element is "(1) that it has a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the preliminary injunction if issued will not adversely affect the public interest." *Prairie Band Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). Furthermore, "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). *See Nero v. Am. Family Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 27541 *8-9 (D.Colo. Case No. Civil Action No. 11-cv-02717-PAB March 2, 2012 (quoting *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997) ("a plaintiff who cannot show any irreparable harm at all from

17

the withholding of a preliminary injunction is not entitled to the injunction however strong

his case on the merits, for he has no need for preliminary relief in such a case . . . .").

2. Plaintiff cannot show that the administrative process would cause irreparable
harm

Plaintiff has not properly plead any actual harm, much less irreparable harm,

from the Board's investigation in Board Case 2017-6034-A. His harm is only

speculative. The Seventh Circuit Court of Appeals dealt with a request to enjoin an

agency investigation in *Abbs v. Sullivan*, 963 F.2d 918 (7th Cir 1992).  In discussing the

complaint that alleged only speculative injury, the court stated that while plaintiff  "*may*

be subject to a wide range of sanctions . . ; his reputation and good standing *may* be

destroyed; his opportunity and ability to secure governmental and private grants *may* be

destroyed," the Court found that it was only if and when a determination of misconduct

was made or sanctions imposed, which had not happened, could the consequences

occur. *Abbs* at 928 (emphasis in original). While Plaintiff may not like being investigated

or the possible outcome of a disciplinary proceeding, he cannot bring a suit to enjoin the

proceedings much like a criminal defendant cannot bring suit to enjoin the procedures

under which he is to be tried.  *Abbs* at 928.

Absent extraordinary circumstances, the cost, anxiety, and inconvenience of

defending against a single state court proceeding does not constitute "irreparable

injury." *C.f. Kugler v. Helfant*, 421 U.S. 117, 124 (1975). Plaintiff must show a significant

risk of irreparable harm to demonstrate that the harm is not speculative. *Greater*

*Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Plaintiff

18

currently has an unencumbered license to practice dentistry in Colorado. If an agency proceeding itself constituted an irreparable injury, then no regulatory agency could ever investigate a licensee's conduct. The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without its issuance.  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); (noting that a preliminary injunction will not issue without a showing of "a clear and present need for equitable relief to prevent irreparable harm."  (citation omitted)). To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Id*. (internal citations omitted); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (more than mere possibility of irreparable harm is required to justify a preliminary injunction) ; *Gitlitz v. Bellock*, 171 P.3d 1274, 1279 (Colo. App. 2007) (to be irreparable, harm must be certain and imminent). "Merely serious or substantial" harm is not irreparable harm.  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotation omitted).  "[Petitioners here] seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Heideman*, at 1189 (citation omitted).

Plaintiff has alleged no facts suggesting that he will suffer any irreparable harm during the time it will take to defend against the oncoming administrative action in the sense of making it difficult or impossible for him to practice dentistry. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (Speculative harm does not amount to irreparable injury); *Greater Yellowstone Coalition*, 321 F.3d at 1258

(Petitioners must allege and then show a significant risk of irreparable harm to demonstrate that the harm is not speculative); *Franks v. Nimmo*, 683 F.2d 1290, 1294 (10th Cir. 1992) (no irreparable harm where employee's status, duties, salary, or activities changed or altered in any way). Plaintiff simply claims bad faith but does not show any actual restriction on his ability to practice. Plaintiff's conclusory allegations that he would suffer irreparable harm if the proceedings are not halted is insufficient to support a claim for the extraordinary injunctive relief requested.

3. All other factors weigh against the grant of a preliminary injunction against Defendants

As to the other factors articulated above from *Potawatomi* at 1246, Plaintiff cannot show a reasonability probability of success on the merits of his claim to stop the disciplinary proceedings because he has not sufficient pled any violation of his constitutional rights. During the administrative proceeding, plaintiff will have the full spectrum of rights and remedies available under the Administrative Procedures Act, which is plain, speedy, adequate remedy at law. *See* § § 24-4-105 and 106, C.R.S. The balance of equities also favors the Defendants and denying Plaintiff his requested injunctive relief stopping Board investigations.[2]  The balancing test is internal requiring that "the possible harm to the Plaintiff if the injunction is not entered be balanced against the possible harm to the Defendant[s] if the injunction is entered." *Brumfiel v.*

---

[2] The public interest factor is often intertwined with the balance of equities factor when a government agency is involved.  *Pelletier v. United States*, 2011 U.S. Dist. LEXIS 56648 *13 (D. Colo. Civil Action No. 11-cv-01377-WJM-CBS, May 25, 2011)

*U.S. Bank*, 2013 U.S. Dist. LEXIS 64935  *17 (D. Colo. Civil Action No. 12-cv-02716-WJM, May 6, 2013) (citation omitted).  The Plaintiff has no "equities." There is no allegation that the Plaintiff is losing money, patients, or anything else because he is the subject of an agency proceeding. Furthermore, his claims of "harassment" are not reasonable. Plaintiff has been aware of Board Case no. 2017-6034-A involving treatment of J.R. since October of 2017, and that the case was not resolved at the time of his signing the stipulation in Board Case no. 2016-6415-A. Plaintiff chose to resolve Board Case no. 2016-6415-A, knowing that it did not resolve the other open case under investigation. The Board is charged with protecting the public against the substandard practice of dentistry and the "equity" associated with that mission outweighs the discomfort of being investigated to Plaintiff.  Thus, on balance the injury to the Defendants of being foreclosed from carrying out their duty to protect the public is far greater than that of the Plaintiff needing to defend against the instant action.

## C. PLAINTIFF'S DUE PROCESS RIGHTS HAVE NOT BEEN VIOLATED

Plaintiff has alleged that the disciplinary proceeding itself infringes on his right to due process. Plaintiff's Complaint ¶17. However, Plaintiff has not shown how waiting to challenge the results of the proceeding until after the Board has made a final board order does not satisfy due process. Plaintiff alleges "bad faith" but "bad faith" is not a cause of action. *See Waye v. First Citizen's Nat. Bank*, 846 F.Supp. 310, 315 (M.D. Penn. 1994). Plaintiff has not alleged any cognizable harm or adverse action from the investigation such as a loss of patients, income, privileges, or certifications and therefore has failed to state a claim for relief. Plaintiff has alleged, without citation, that

he has a due process right to be free of "bad faith prosecutions." Plaintiff has not stated whether he is pleading a procedural or substantive due process claim.

1. Procedural Due Process

To establish a procedural due process claim, a plaintiff must show that (1) he possessed a constitutionally-protected interest to life, liberty, or property such that due process protections were applicable; and (2) he was not afforded an appropriate level of process. *Guttman v. Khalsa*, 669 F.3d 1101, 1113-14 (10th Cir. 2012).

To establish deprivation of a property interest arising from a professional license, a person's legal right to practice in their profession must be significantly altered before a due process claim arises. *Phelps v. Wichita Eagle-Beacon,* 886 F.2d 1262, 1269 (10th Cir. 1989) (citation omitted); *see also Chiddix Excavating, Inc. v. Colorado Springs Utils.,* 737 F. App'x 856, 858 (10th Cir. 2018). Even if a person has a property interest in a license, he does not have a due process right to a hearing during an investigation. *Setliff v. Mem'l Hosp. of Sheridan Cy*, 850 F.2d 1384, 1395 (10th Cir. 1988) (finding "no unconstitutional deprivation . . . [of a doctor's medical privileges at a county hospital] simply because he was not granted a hearing during the investigation" because "during the investigation his privileges were not restricted in any way."); *see also Hannah v. Larche*, 363 U.S. 420, 442 (1960) ("[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."). Rather, as clearly established in law, a plaintiff has a right to a pre-deprivation hearing. *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70

(1972). "The essential requirements of due process … are notice and an opportunity to respond." *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 546 (1985). The J.R. complaint and Board Case 2017-6034-A that arose from it has yet to be adjudicated and no restrictions have yet been placed on Plaintiff's license. Therefore, there has been no procedural due process violation because Plaintiff has suffered no injury. Plaintiff will have a chance to challenge the Inquiry Panel's allegations and then appeal any finding against him, should such a finding be made.

2. <u>Substantive Due Process</u>

If the Plaintiff is alleging substantive due process violations, assuming that Plaintiff has a liberty interest at stake in this case, Plaintiff fails to satisfy the second prong of a cognizable substantive due process claim — that "the challenged governmental action was 'arbitrary and capricious.'" *Crider v. Board of County Com'rs of County of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001). Further, the "real issue" in substantive due process cases is "whether the plaintiff suffered from governmental action that either (1) infringes upon a fundamental right, or (2) shocks the conscience." *Seegmiller v. Laverkin City*, 528 F.3d 762, 768 (10th Cir. 2008). The conduct of which Plaintiff complaints is squarely within the powers and duties of the Dental Board pursuant to §12-220-106, C.R.S. Plaintiff does not allege that a fundamental right is involved, therefore, his burden is to allege facts showing that the action complained of "does not further a legitimate state purpose by rational means." *Id*. at 772. Plaintiff fails to allege facts showing that the conduct does not further a legitimate state purpose by rational means and therefore his claim must be dismissed.

23

**CONCLUSION**

Pursuant to Fed. R. Civ. P. Rules 12(b)(1) and (6), Defendants are entitled to dismissal of this action. Plaintiff fails to establish that this Court has subject matter jurisdiction over his claims, most importantly failing to overcome the standard for *Younger* deference, and fails to state any plausible claim for relief against Defendants. Defendants respectfully request that the Court dismiss all claims.

Respectfully submitted this 19th day of May 2021.

PHILIP J. WEISER
Attorney General

*/s/ Daniel Snow*

DANIEL B. SNOW #49821*
Assistant Attorney General
Business & Licensing
Attorneys for the Colorado Dental Board
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone:  720-508-6380
FAX:  720-508-6037
E-Mail:  Daniel.snow@coag.gov
*Counsel of Record

## **CERTIFICATE OF SERVICE**

I certify that on this 19th day of May, 2021, I filed electronically the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND RESPONSE IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF** with the Clerk of Court using CM/ECF, which will generate a notice and service on the following:

Jacques G. Simon Attorney at Law
200 Garden City Plaza, Suite 301
Garden City, NY 11530
516-551-2957
jgs@jacquessimon.com

_s/ Doreen Ramos_
Doreen Ramos, Senior Paralegal
For the Office of the Attorney General